**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PETRONILLA OSUAGWU,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **C.A. No. 20-cv-3291** |
| **V.** | § | |
| | § | |
| **ROBERT A. MCDONALD,** | § | |
| **SECRETARY OF VETERANS AFFAIRS** | § | |
| **Defendant.** | § | **(JURY TRIAL DEMANDED)** |

**<u>ORIGINAL COMPLAINT</u>**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, Petronilla Osuagwu, filing her Original Complaint complaining of Defendant, Robert A. McDonald, Secretary of Veterans Affairs and in support thereof respectfully shows this Court as follows:

**I.    JURISDICTION, PARTIES AND VENUE**

1.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. Sections 1331 and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. sections 2000e, *et. seq.* ("Title VII") and 42 U.S.C. §1981.

2.    Plaintiff Petronilla Osuagwu ("Ms. Osuagwu" or "Plaintiff") resides in Fort Bend County, Pearland Texas and at all times relevant to the actions in this Complaint, was employed in Houston, Texas by the Defendant.  Ms. Osuagwu is protected from discrimination based on her national origin (Nigerian) and retaliation for making protected complaints of discrimination by Title VII and Section 1981. Ms. Osuagwu was at all relevant times an employee within the meaning of Title VII and Section 1981.

3.    Plaintiff avers on information and belief that Defendant, Robert A. McDonald, Secretary of Veterans Affairs, is an active United States governmental agency and may be sued in

1

this court under Title VII and Section 1981.

4.      The defendant is an "employer" within the meaning of section 701(b) of Title VII in that it engages in industry affecting commerce and employed more than fifteen (15) regular employees at all times relevant to the facts and assertions in this Complaint.

5.      The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

## II.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      On July 5, 2019, Ms. Osuagwu filed a Complaint of Discrimination with the Deputy Assistant Secretary for Office of Resolution Management (DAS/ORM) for discrimination based on national origin and reprisal based on EEO-protected activity.  Ms. Osuagwu's Complaint was assigned Case No. 2003-0580-2019103337 ("Charge").

7.      Ms. Osuagwu's Charge, and any amendments and/or attachments thereto, asserted that Defendant retaliated against her in 2019 because of her EEO protected-activities beginning in February 2019 and continuing on June 7, 2019. Ms. Osuagwu also complained that in 2019 Defendant, through manager D. McKinney, discriminated against her by subjecting her to disparate treatment and a hostile work environment based on her national origin (Nigerian).

8.      After the Defendant's investigation of Ms. Osuagwu's complaint, a final agency decision was issued on June 25, 2020.

9.      Ms. Osuagwu has exhausted all administrative and judicial prerequisites to the institution of this action.  Plaintiff has opted to file suit within the statutory limitations period; 90 days of her receipt of the final-agency decision.

## III.      FACTUAL BACKGROUND

10.     Ms. Osuagwu began her employment with Defendant in 2004.  Plaintiff is currently employed as a Registered Nurse and has been during the entire time that the events set forth in this

2

complaint occurred.  Ms. Osuagwu is of Nigerian accent.

11.     Ms. Osuagwu was first assigned to Defendant's Operative Care Line in 2008 after she had successfully pursued a wrongful termination claim against Defendant based on national-origin discrimination.

12.     When Ms. Osuagwu was first assigned to the Operative Care Line, she told her first-line supervisor D. McKinney about her EEO Charge in response to questions about her assignment.

13.     After that, D. McKinney openly made comments regarding Ms. Osuagwu's EEO claims against Defendant and the fact that Ms. Osuagwu had previously hired a lawyer to save her employment. D. McKinney would often tell Ms. Osuagwu that he knew she was going to contact her lawyer when the two disagreed.

14.     During the years that Ms. Osuagwu worked with D. McKinney Ms. Osuagwu also faced national-origin discrimination by D. McKinney, who has told Ms. Osuagwu on multiple occasions over the years that he worked with her that he does not like or want to work with Nigerian nurses.  D. McKinney has created a hostile work environment for Ms. Osuagwu and other Nigerian nurses over the years.

15.     In 2019, D. McKinney's overt acts toward Ms. Osuagwu became calculated to force Ms. Osuagwu to remain without her long-sought after promotion to Registered Nurse II or to lose her job.

16.     On February 14, 2019, D. McKinney denied Ms. Osuagwu's request to be 'grandfathered' for her promotion to Nurse II. Ms. Osuagwu complained to D. McKinney that his denial was unlawfully based on her national origin and that he had allowed Filipino and Indian nurses to be grandfathered to Nurse II without the mandates he was placing on Ms. Osuagwu.

17.     In March 22, 2019, D. McKinney charged Ms. Osuagwu with AWOL for a date

3

that Ms. Osuagwu had permission to take. Ms. Osuagwu suffered the inconvenience of having to grieve D. McKinney's charges against her to have the AWOL removed.

18.     On May 1, 2019, D. McKinney denied Ms. Osuagwu's request for four (4) weeks of annual leave for July 2019 to visit her native country of Nigeria for the funeral of her mother; a request that he routinely approved for nurses outside Ms. Osuagwu's national origin.

19.     Ms. Osuagwu believes that the aforementioned events were based on her national origin based on comments made by D. McKinney in 2018 and 2019 that he did not wish to work with Nigerians and that he did not want another Nigerian in the unit.

20.     Differently, in May 2019, Ms. Osuagwu was assigned to care for Dr. Omer and resident Wu's patient. During her shift, Ms. Osuagwu became concerned about the patient's health and sought Dr. Wu's input. Upon contacting Dr. Wu, Dr. Wu did not provide Ms. Osuagwu with directions that would help the patient and, for the welfare of the patient, Ms. Osuagwu felt compelled to contact Dr. Omer who instructed Ms. Osuagwu how to treat the patient.

21.     Dr. Omer instructed Ms. Osuagwu to start an I-V and to prepare an incident report concerning the patient's accident, which she did. Dr. Omer also instructed Dr. Wu to report to the unit at about 4am that morning.

22.     When Dr. Wu arrived, he asked nurse T. Cherukara for the name of the nurse taking care of the thoracic patient who had called Dr. Omer, and T. Cherukara told resident Wu it was Ms. Osuagwu.

23.     After that date, Defendant did not assign Ms. Osuagwu thoracic patients. When Ms. Osuagwu asked her Charge Nurse the reason she was not being assigned to thoracic patients, she was told that resident Wu said she should not be assigned to thoracic patients.

24.     Extremely concerned, Ms. Osuagwu reported Dr. Wu's instruction to Dr. Omer at the end of May.  In response, Dr. Omer Ms. Osuagwu not to worry and that he would talk to Dr.

4

Wu about Ms. Osuagwu concern.  Dr. Omer assured Ms. Osuagwu that he was and always had been extremely satisfied with Ms. Osuagwu's performance as a nurse and that he wanted Ms. Osuagwu to continue to care for his thoracic patients.

25.	After a few shifts had passed, nothing changed. Ms. Osuagwu still was not being assigned to thoracic patients. As such, on or about June 7, 2019 Ms. Osuagwu called Dr. Wu to ask him the reason that he did not want her to work with the cardio thoracic patients. Ms. Osuagwu explained that his directive made her look as if she was not properly performing her job. Ms. Osuagwu told him that her report to Dr. Omer back in May was necessary and not personal. Dr. Wu responded by asking Ms. Osuagwu who had told her what he said.

26.	Ms. Osuagwu told Dr. Wu that it did not matter and that he was engaging in discrimination against her by taking work away from her. Believing that, like D. McKinney, Dr. Wu was subjecting her to this adverse treatment because of her national-origin, Ms. Osuagwu told Dr. Wu that she would be filing a complaint of national origin discrimination against him if he did not allow her to work and take care of the thoracic patients in the unit like he did for all the other nurses who are Indian, Filipino and White.

27.	On June 14, 2019 Nurse Manager Dennis McKinney sporadically wrote Ms. Osuagwu up for a matter where she did nothing wrong and followed procedure. The write-up did not make sense and was not supported by any misconduct.

28.	On June 14, 2019, Dennis McKinney gave Ms. Osuagwu a second write-up stating that she could no longer take assignments from within the unit consisting of a post-operative cardio-thoracic patient unless under the direction of an assigned preceptor.  According to the counseling issued to Ms. Osuagwu, this directive and discipline was given as a result of Dr. Wu's complaints against her on or about June 11, 2019.

29.	Based on the chronology of events and facts, the June 14, 2019 discipline and

directions issued to Ms. Osuagwu by D. McKinney were in retaliation for her complaint of national-origin discrimination made on June 7, 2019 to Dr. Wu and for Ms. Osuagwu's continuous complaints about D. McKinney's failure to promote her to Nurse2 based on her national origin even though she should have been promoted to Nurse2 under the VA's guidelines which D. McKinney and HR had allowed other Filipino and Indian nurses (who have not previously complained against D. McKinney) to be promoted under.

30.     As demonstrated above, Ms. Osuagwu has been consistently been a target of D. McKinney's retaliation for her EEO activities and he has created a hostile work environment for Ms. Osuagwu.

31.     Additionally, Dr. Wu and D. McKinney worked together to retaliate against Ms. Osuagwu for complaining about national-origin discrimination on or about June 7, 2019 by issuing her a disciplinary reprimand on June 14, 2019 and stripping her of a job-duty that was prestigious in nature.

32.     Defendant's acts and failures concerning Ms. Osuagwu have been discriminatory and retaliatory and they are forbidden by Title VII.  By this lawsuit, Ms. Osuagwu seeks redress.

33.     Vicarious Liability Respondeat Superior:  Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or representatives including but not limited to D. McKinney, D. Wu, and other individuals within Defendant's human resource and/or management team did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment with Defendant or in the furtherance of Defendant's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of

6

Defendant, it's management, officers, owners, servants, employees, and/or representatives.

## IV.    CAUSE OF ACTION

### A.  Retaliation pursuant to Title VII and Section 1981

34.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs 6 through 33 above and incorporates the same herein as though fully set forth.

35.    After engaging in protected activity, Plaintiff was subsequently and repeatedly ignored and disciplined, and subjected to adverse actions.

36.    As herein alleged, Defendant illegally retaliated against Plaintiff because she complained of national-origin discrimination and, thereby, engaged in EEO activity.  Defendant had no legitimate business reasons for any of its negative acts against Plaintiff. Each act of retaliation is in violation of Title VII's anti-retaliation provisions.

37.    As a direct and proximate result of Defendant's willful, knowing, intentional and/or reckless discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

38.    The above-described acts on Defendant's part were undertaken in violation of Title VII and proximately caused Plaintiff substantial injuries and damages.

### B.  Discrimination pursuant to Title VII and Section 1981

39.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs 6 through 33 above and incorporates the same herein as though fully set forth.

40.    Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII by intentionally interfering with Plaintiff's employment and its benefits because of her nation-origin. Defendant's violations include but are not limited to stereo-typing and disparate treatment based on national-origin.

7

41. This intentional interference based on national-origin has consisted of discrimination of a continuous nature over Ms. Osuagwu's employment.

42. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff based on her national-origin, which has led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

43. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

44. The above-described acts on Defendant's part were malicious, reckless, and intentional and consisted of discrimination of a continuous nature.

## V.     JURY DEMAND

45. Plaintiff requests that this action be heard before a jury.

## VI.     DAMAGES

46. Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously has affected Plaintiff in her occupation.  Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer financial loss, humiliation, mental anxiety and stress, and other damages.  Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

47. Moreover, because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in the cause of actions set forth herein and Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

48. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living.  Accordingly, Plaintiff

8

seeks all general, special, incidental and consequential damages as shall be proven at trial.

49.    Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant.  Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against it to avoid unjustly enriching Defendant.

## VII.    PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a.    Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates based on national origin and/or retaliates on the basis of protected activity.

b.    All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c.    Compensatory damages for pain and mental suffering in the past and future;

d.    Reasonable attorney's fees, with conditional awards in the event of appeal;

e.    Pre-judgment interest at the highest rate permitted by law;

f.    Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g    Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

h.    Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any amendment hereto.

9

Respectfully submitted,

The Murphy Law Practice, PLLC

/s/ *Marjorie A. Murphy*

_____

Marjorie A. Murphy
Attorney-in-Charge
State Bar No. 24013218
Federal Bar No. 34512
2101 Citywest Blvd, Suite 100
Houston, Texas 77042
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email: marjorie@themurphylawpractice.com

**ATTORNEY FOR PLAINTIFF**
Petronilla Osuagwu